IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOHN CORNELIUS GASKINS,
    Petitioner,

    v.                                      Civil No. 3:24cv673 (DJN)

CHADWICK DOTSON, *et al.*,
    Respondents.

**MEMORANDUM OPINION**

John Cornelius Gaskins ("Petitioner"), a Virginia prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), contending that Respondents failed to award him all the time that he spent in pretrial custody against his Virginia sentence. Resolution of Petitioner's claims is complicated by the fact that he spent time in custody in Maryland on separate, subsequently dismissed charges, prior to being extradited to Virginia. Specifically, Petitioner contends that he is entitled to relief on the following grounds:

| | |
|---|---|
| Claims 1 and 3 | Virginia violated Petitioner's right to due process by detaining him beyond the length of his sentence when it failed to award him credit for time that he spent in pretrial custody. (ECF No. 1 at 16–17.) |
| Claim 2 | Virginia unlawfully subjected Petitioner to double jeopardy when it failed "to grant him credit for his time spent in the Maryland jail . . . ." (*Id.* at 16.) |

Respondent has moved to dismiss on the grounds that Claims 1 and 3 lack merit and Claim 2 is procedurally defaulted. (ECF No. 16.) Petitioner has responded. (ECF No. 20.) For the reasons stated below, the Motion to Dismiss (ECF No. 16) will be GRANTED.[1]

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation and capitalization in the quotations from the parties' submissions.

# I.    BACKGROUND

The Supreme Court of Virginia laid out the relevant procedural history in its published opinion denying Petitioner's state petition for a writ of habeas corpus. *Gaskins v. Clarke*, 904 S.E.2d 186 (Va. 2024). Specifically, that court stated:

> In December 2018, petitioner was convicted in the Circuit Court of Fairfax County of being a violent felon in possession of a firearm and sentenced to the statutorily mandated term of five years' imprisonment. Petitioner was released on bail pending his appeal of his conviction and allowed to reside in Laurel, Maryland.
>
> In April 2020, while petitioner's appeal was pending in this Court, he was arrested in Prince George's County, Maryland, on charges of assault, possession of a firearm, and use of a firearm in a violent felony. He was later charged with attempted murder, reckless endangerment, and possession of ammunition (collectively, "Prince George's charges"). Due to the Prince George's charges, petitioner was also charged in Montgomery County, Maryland, with violating the terms of his probation there. While incarcerated on the Prince George's charges, petitioner failed to appear in court for a traffic violation case in Anne Arundel County, Maryland. This Court refused petitioner's Virginia appeal on November 25, 2020.
>
> In Maryland, petitioner was initially held without bond on the Prince George's charges. Due to the COVID-19 pandemic, the Prince George's court granted petitioner's request for release to home confinement, conditioned on pretrial services determining he qualified for release. To qualify, petitioner needed a verified address, which he had, and to be free of warrants and detainers. Thus, petitioner initially did not qualify for release to home confinement because he had outstanding warrants in Montgomery and Anne Arundel Counties. However, both of those warrants were quashed by December 1, 2020. At that point, the only impediment to petitioner's home confinement was the weekslong "backlog" of cases waiting to be processed by Prince George's pretrial services.
>
> On January 29, 2021, upon learning of petitioner's incarceration in Maryland, the Fairfax Circuit Court issued a bench warrant for petitioner's arrest, revoked the appeal bond, and ordered that a detainer be issued to Prince George's County to have petitioner returned to Fairfax County. At the time the detainer issued, petitioner's case had yet to be processed by Prince George's pretrial services. After the detainer issued, it became the sole reason Maryland officials determined not to release petitioner to home confinement.
>
> On November 22, 2021, petitioner's Prince George's charges were dismissed by nolle prosequi. In seeking the Maryland court's approval of the dismissal, the prosecution explained it had been "unable to reach the victim" for "a long time" and no longer believed it could prove the charges against petitioner. When approving the dismissal, the court expressed its disappointment that the prosecution had allowed petitioner to "languish in jail" for as long as it had after losing contact with its key witness. On December 1, 2021, petitioner was extradited to Virginia.

On March 8, 2022, petitioner became a state responsible inmate subject to the VDOC's custody. Shortly thereafter, petitioner asked the VDOC for credit toward his five-year Virginia sentence for the time he spent in Maryland custody subject to the Virginia detainer from January 29 to November 22, 2021 — a period of 298 days. The VDOC informed petitioner he would receive credit for only the eight days of his time in Maryland custody corresponding with the time he spent awaiting extradition to Virginia after the Prince George's charges were dismissed.

*Id.* at 187–88.

On December 7, 2022, Petitioner filed a state petition for a writ of habeas corpus with the Supreme Court of Virginia demanding that Virginia award him time against his Virginia sentence for time spent in custody in Maryland. *Id.* at 187  In that petition, Petitioner claimed that the failure to award him that credit violated state law and denied him due process. *Id.* at 188–192. In a July 25, 2024 published opinion, the Supreme Court of Virginia rejected these arguments. *Id.*

In a supplemental brief, Petitioner argued that the failure to award him the sought after sentence credits violated "the Fifth Amendment's prohibition on double jeopardy." *Id.* at 192. The Supreme Court of Virginia concluded:

> This claim is not properly before the Court because it was not raised in petitioner's initial petition and because petitioner has not sought nor been granted leave to amend his petition to include this claim. *See* Code § 8.01-654(B)(2) (a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing"); Rule 1:8 ("No amendments may be made to any pleading after it is filed save by leave of court."); Rule 5:7(e) (a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the Court to do so).

*Id.* Thereafter, Petitioner filed his § 2254 Petition with this Court.

## II.    ANALYSIS

### A.    Applicable Constraints Upon Federal Habeas Review

To obtain federal habeas relief, a petitioner must demonstrate, at a minimum, that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the relevant question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given the above standard, the Supreme Court of Virginia's decision figures prominently in this Court's opinion.

### B.    Due Process

Petitioner leads off his due process challenge by asserting that he is entitled to credit against his Virginia sentence for time spent in Maryland custody pursuant to section 53.1-187 of the Virginia Code. (ECF No. 1 at 19.) The Supreme Court of Virginia flatly rejected this argument and stated:

4

The Court holds this claim is without merit. As relevant here, Code § 53.1-187 provides sentence credit to "any person who is sentenced to a term of confinement in a correctional facility" for time that person spent awaiting trial or pending an appeal confined in a "state or local correctional facility." Elsewhere in Title 53, a "local correctional facility" is defined for purposes of the Title as a facility "owned, maintained or operated by any political subdivision or combination of political subdivisions of the Commonwealth," and a "state correctional facility" is defined as a facility "operated by the Department of Corrections." Code § 53.1-1. Because petitioner has not demonstrated he was housed "in a state or local correctional facility" as defined by Code § 53.1-1 while he was confined in Maryland, he has not established his entitlement to credit toward his Virginia sentence for that confinement under Code § 53.1-187.

*Gaskins*, 904 S.E.2d at 188.

Next, Petitioner argues that, under general due process principles, "time spent incarcerated must be credited towards some sentence to prevent unlawful detention." (ECF No. 1 at 21.) In rejecting this claim, the Supreme Court of Virginia stated:

In another portion of his petition, petitioner argues the federal Due Process Clause requires that his Virginia sentence be credited for the time he spent incarcerated in Maryland. Citing *Durkin v. Davis*, 390 F. Supp. 249 (E.D. Va. 1975), petitioner asserts he has a protected liberty interest in credit toward his Virginia sentence for any post-conviction incarceration he has served due to that sentence. *See id.* at 252 ("The right to pre-conviction and post-conviction confinement sentence credit constitutes an interest in 'liberty' because when such credit is withdrawn, the sentence that a state prisoner must serve is automatically increased and the date for parole eligibility is, thereby, extended."), *rev'd on other grounds*, 538 F.2d 1037 (4th Cir. 1976). Relying solely on *Durkin*, petitioner argues that, because he would have been released to home confinement in Maryland but for his Virginia detainer, his Maryland incarceration is the equivalent of time served on his Virginia sentence such that he has a constitutional right to receive credit for all the time he spent incarcerated in Maryland while the Virginia detainer was pending.

The Court holds this claim is without merit. While the Due Process Clause precludes states from "depriv[ing] any person of life, liberty, or property without due process of law," petitioner fails to demonstrate that Virginia, as opposed to Maryland, deprived him of his opportunity to be held on home confinement while his Prince George's charges remained pending. Although Maryland may have chosen to release petitioner to home confinement were it not for his Virginia detainer, the sole and ultimate discretion to make that choice and decide how or where petitioner would await the resolution of his Prince George's charges remained exclusively with Maryland and its officials.

As an initial matter, Maryland had the power to incarcerate petitioner without bail based on his Prince George's charges alone, regardless of the detainer,

and it did so during the months before the detainer issued. *See United States v. Salerno*, 481 U.S. 739. 751 (1987) ("When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat."); *Mora v. City of Gaithersburg*, 519 F.3d 216, 222 (4th Cir. 2008) (explaining that, "although the Due Process Clause typically requires a criminal conviction before a person may be deprived of liberty," certain categories of people can be constitutionally detained without conviction, including "dangerous suspects awaiting trial"); *see also Bradds v. Randolph*, 239 Md. App. 50, 54 (2018) (observing the "Maryland Rules long have recognized that decisions about whether and on what terms to release defendants before trial are discretionary"). Further, petitioner's detainer was not governed by the Interstate Agreement on Detainers ("IADA"), to which Virginia and Maryland are parties and by which they can impose reciprocal obligations on one another when lodging detainers. *See* Code §§ 53.1-210 *et seq.* (implementing IADA in Virginia); Md. Code Ann., Corr. Servs. §§ 8-401 *et seq.* (implementing IADA in Maryland); *see also Carchman v. Nash*, 473 U.S. 716, 719 (1985) ("The [IADA] is a congressionally sanctioned interstate compact . . . and thus is a federal law subject to federal construction."). By its terms, the IADA governs detainers based on "any untried indictment, information or complaint." Code § 53.1-210, art. Ill(a); Md. Code Ann., Corr. Servs. § 8-405, art. Ill(a). Consistent with this language, the United States Supreme Court has held that Congress intended the IADA "to apply only to detainers based on untried criminal charges." *Carchman*, 473 U.S. at 728–34 (holding IADA does not apply to detainers based on "a pending probation-violation charge"); *see also State v. Jimenez*, 808 N.W.2d 352, 355–57 (Neb. 2012) (holding IADA did not apply to detainer issued after petitioner was convicted but before he was sentenced and citing accordant cases). Because the detainer here was not based on "untried criminal charges," it did not trigger any of the reciprocal obligations Virginia might place on Maryland by issuing a detainer against someone in its custody, like petitioner.

Outside the bounds of the IADA, the detainer had no coercive force or controlling authority over Maryland's decision to keep petitioner confined in jail, rather than at home, pursuant to the Prince George's charges. Instead, the detainer operated as merely a "'matter of comity'" between two coequal sovereigns: Virginia and Maryland. *Rease v. Commonwealth*, 221 Va. 289, 294 & n.* (1984) (quoting *Moody v. Daggett*, 429 U.S. 78, 80, n.2 (1976)). As this Court has explained, comity "is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will. . . . Comity is not given effect when to do so would prejudice a State's own rights or the rights of its citizens. *McFarland v. McFarland*, 179 Va. 418, 430 (1942) (holding principles of comity did not require a Virginia court to give effect to a divorce decree from North Carolina); *see also Wilkinson v. Youell*, 180 Va. 321, 326 (1942) (explaining that, where a prisoner is "charged with the violation of the criminal laws of two sovereignties," the sovereignty with custody of the prisoner has a "strict right to exclusive custody," and any waiver of that right is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it" under the rules of comity) (quoting *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922)).

Federal courts agree and have stated that comity is a matter of discretion rather than obligation, and thus authority over a detainee facing charges or sentences in multiple jurisdictions belongs to the jurisdiction with physical custody of the detainee. *See, e.g., Hernandez v. United States Attorney Gen.*, 689 F.2d 915, 918 (10th Cir. 1982) ("Whether jurisdiction and custody of a prisoner shall be retained or surrendered is a matter of comity and is to be determined by the sovereign having custody.") (internal quotation marks and citation omitted); *Strand v. Schmittroth*, 251 F.2d 590, 598 (9th Cir. 1957) (explaining, in holding a federal district court had no authority to order state officials to transfer custody of a state prisoner to federal officials, that "[a]s courtesy cannot be enforced, neither can comity," and "the court of one sovereign [therefore] cannot compel the exercise of comity by the court of a different power").

Numerous federal courts have distilled these notions of comity as they apply to authority over detainees facing charges or sentences in multiple jurisdictions into the "doctrine of primary jurisdiction" or "primary custody. *See, e.g., Johnson v. Gill*, 883 F.3d 756, 761–63 (9th Cir. 2018) (citing 258 U.S. at 259); *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *see also Thomas v. Whalen*, 962 F.2d 358, 362 n.7 (4th Cir. 1992) (discussing "primary jurisdiction").[2] Under this doctrine, the "primary jurisdiction over a person is generally determined by which [sovereign] first obtains custody of, or arrests, the person," and primary jurisdiction then continues "until the first sovereign relinquishes its priority in some way." *Cole*, 416 F.3d at 897. Courts applying this doctrine generally agree that a sovereign relinquishes primary jurisdiction by, among other acts, releasing a detainee on bail or dismissing the charges against him. *Id.*; *accord, e.g., Johnson*, 883 F.3d at 765; *Pope*, 889 F.3d at 415. Further, a sovereign does not obtain primary jurisdiction merely by issuing a detainer. *See, e.g., Thomas*, 962 F.2d at 360 ("A detainer neither effects a transfer of a prisoner from state to federal custody nor transforms state custody into federal custody by operation of law."); *Wiseman v. Wachendorf*, 984 F.3d 649, 654 (8th Cir. 2021) ("A detainer . . . does not alter the custody status of a prisoner.") (citing *Thomas*). To the contrary, issuing a detainer indicates the issuing state has "agreed to surrender primary jurisdiction." *Johnson*, 883 F.3d at 766 (holding Texas' issuing detainer with respect to prisoner in federal custody supported conclusion that Texas had surrendered primary jurisdiction).

Applying this framework to the facts here further underscores that Virginia had no authority over petitioner's confinement or the location thereof in Maryland while the Prince George's charges remained pending. Although Virginia may have obtained primary jurisdiction over petitioner when it arrested and later convicted him on his charge in Fairfax County, it relinquished that primary jurisdiction when

---

[2]    The federal courts articulated this doctrine to address jurisdiction "[a]s between the state and federal sovereigns." *Cole*, 416 F.3d at 897. Some state courts have applied it to situations like the one here, to address jurisdiction over a detainee as between two states. *See, e.g., Matter of Blake v. Inmate Records Clerk*, 213 A.D.3d 1037, 1039 (N.Y. App. Div. 2023) (applying doctrine as between New York and Delaware); *State v. Start*, 427 N.W.2d 800, 803 (Neb. 1988) (discussing same as between Nebraska and Colorado).

it released him on bail pending appeal. Maryland then obtained primary jurisdiction when it arrested petitioner on the Prince George's charges. As long as those charges were pending, Maryland maintained primary jurisdiction and, by extension, ultimate authority over the status of petitioner's custody. Only after those charges were dismissed did Maryland relinquish that authority. Consistent with these changes in authority over petitioner's detention, he has received credit for the time he spent incarcerated in Maryland after the Prince George's charges were dismissed.

In sum, as a matter of comity, the detainer here was not an exercise of any authority by Virginia over Maryland or petitioner, much less an exercise of authority that deprived petitioner of his liberty or his ability to be confined at home. The detainer was merely a request from Virginia that Maryland officials were free to reject, and Maryland's decision to deny petitioner release to home confinement based on the detainer was therefore an exercise of only Maryland's own sovereign power. Had Maryland decided to release petitioner notwithstanding the detainer, Virginia would have had no recourse to challenge that decision or seek to overturn it. *See Strand*, 251 F.2d at 600 (stating that where a prisoner subject to a conviction in one state leaves that state and is arrested in a second state, the first state "has no prior rights," its "officers cannot take the prisoner from the custody of the" second state, and its "courts cannot enjoin the [second state's] courts from proceeding"). We therefore reject petitioner's assertion that his incarceration in Maryland was equivalent to time served on his Virginia conviction.

Further, under similar circumstances, where a prisoner seeks credit toward a sentence imposed by one sovereign for time he spent incarcerated by a separate sovereign, federal courts have held that due process protections do not require granting such credit. *See, e.g., Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (holding due process did not require crediting Bagley's Iowa sentence with time he served on a federal sentence that was later vacated). *Bagley* explained that "federal courts have found no due-process violation from a denial of federal credit for time served on a vacated state sentence, even when service of the state sentence delayed the start of a federal sentence." *Id.* at 330.[3] *Bagley* thus concluded "the federal

---

[3]     This Court has held that "where a prisoner is . . . being detained under a void sentence, he is entitled to credit for the time served under such sentence on a valid sentence, or sentences, entered against him prior to the time he began serving the void sentence." *Peyton v. Christian*, 208 Va. 105, 108 (1967) (holding petitioner was entitled to credit toward a 1945 sentence in Portsmouth for time spent confined on a 1944 sentence in Norfolk that was later declared void) (internal quotation marks and citation omitted). Similarly, the Fifth Circuit in *Scott v. United States*, 434 2d 11 (5th Cir. 1970), a case relied on by *Bagley*, acknowledged that, "if several or consecutive federal sentences are imposed upon a defendant, some of which are void, credit against the valid sentence should be given for the time spent in federal custody." *Id.* at 21 (emphasis in original). Nevertheless, *Scott* held this rule does not apply where the void sentence and the valid sentence were imposed by different jurisdictions, in that case Mississippi and the United States. *Id.* at 21–22. In the same way, the rule articulated in *Peyton* does not apply here where

Constitution did not require the state of Iowa . . . to grant [a prisoner] credit on state sentence on account of legal errors made by the federal district court" because if "an injustice has been done, it has been done by the United States, not by the State of Iowa." *Id.* Here too, we conclude that due process does not require Virginia to grant petitioner credit toward his Virginia sentence for time he spent incarcerated on his Prince George's charges subject to Maryland authority, even when his time in Maryland delayed the start of his Virginia sentence, and even assuming, as petitioner asserts, the circumstances surrounding the dismissal of his Prince George's charges indicate he was "unjustly" incarcerated in Maryland. As in *Bagley*, any injustice is attributable to Maryland and not Virginia.

This conclusion comports with the more general principle that a deprivation of liberty or property is not, under the Due Process Clause, "attributable to a State unless it is traceable to the State's power or authority." *See Lindke v. Freed*, 601 U.S. 187, 194–95, 198 (2024) (interpreting "statutory requirement of action 'under color of state law'" under 42 U.S.C. § 1983 and explaining that this requirement "and the 'state action' requirement of the Fourteenth Amendment are identical") (internal quotation marks and citation omitted). Because Virginia exercised no power or authority over Maryland's decision to incarcerate petitioner while the Prince George's charges were pending, any associated deprivation of liberty is not sufficiently attributable to Virginia to implicate the Due Process Clause.

It follows that the circumstances here are materially distinguishable from those in *Durkin*, the sole authority petitioner cites in support of his due process claim. There, a Virginia court denied statutorily created sentence credit to a prisoner for time he spent incarcerated in a Virginia jail, both pretrial and post-conviction, because he had escaped from the jail and fled to Florida. A prisoner's escape provided a basis for denying credit under the relevant statute,[4] and the prisoner complained he had not received sufficient procedural due process before the court concluded he was an escapee and denied him the credit he would otherwise have been due. *Durkin*, 390 F. Supp. at 250–51. In concluding the prisoner was entitled to greater process than he received, *Durkin* determined, in part, that the prisoner had a constitutionally protected liberty interest in "pre-conviction and post-conviction confinement sentence credit." *Id.* at 252–56. Unlike petitioner, however, the prisoner in *Durkin* sought credit for confinement that occurred exclusively in Virginia. And the credit he sought would have gone toward his sentence on the same Virginia convictions on which that confinement was based. Here by comparison, petitioner demands credit toward his Virginia sentence for time he was confined in another state due to unrelated charges brought by that state. *Durkin* does not hold that due process entitles petitioner to such credit and, for the reasons above, neither do we.

---

petitioner seeks credit toward a Virginia sentence for time he spent incarcerated pursuant to Maryland's sole authority.

[4]    Former Code § 53-208, the precursor to Code § 53.1-187, provided that any person sentenced to a term of imprisonment was entitled to credit toward that sentence for "all time actually spent by such person . . . in jail or the penitentiary awaiting trial, or pending an appeal," but "[n]o such credit. . . shall be given to any person who shall break jail or make an escape."

*Id.* at 188–192 (alterations in original) (omissions in original).

Undeterred, Petitioner asserts that the cases of *United States v. Wilson*, 505 U.S. 329

(1992) and *United States v. Brown*, 977 F.2d 574 (4th Cir. 1992) demonstrate that due process

demands that he should be given additional credit against his Virginia sentence for time spent in

Maryland custody. (ECF No. 1 at 22.) Petitioner is incorrect. Neither of these cases speak to

the requirements of due process. Rather, they interpreted 18 U.S.C. § 3585(b)[5], which governs

sentence credit for federal defendants. *United States v. Wilson*, 503 U.S. 329, 337 (1992)

(reviewing 18 U.S.C. § 3585(b) and stating that "Congress made clear that a defendant could not

receive a double credit for his detention time"); *United States v. Brown*, No. 91-5877, 1992 WL

237275, at *1 (4th Cir. Sept. 25, 1992) (citing 18 U.S.C. § 3585(b) and concluding that "[t]he

district court was thus correct in its view that it could not depart in order to give Brown credit for

time he had served on his state sentence, because the resulting sentence would be contrary to the

statute").

Petitioner fails to demonstrate that the Supreme Court of Virginia's rejection of his due

process claim was wrong, much less unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2) (setting the

standard for obtaining federal habeas relief). Accordingly, Claims 1 and 3 will be DISMISSED.

---

[5]     That statute provides:

> **(b) Credit for prior custody.**--A defendant shall be given credit toward the service
> of a term of imprisonment for any time he has spent in official detention prior to
> the date the sentence commences--
>> **(1)** as a result of the offense for which the sentence was imposed; or
>> **(2)** as a result of any other charge for which the defendant was arrested after the
>> commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585.

## C.    Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  State exhaustion "is rooted in considerations of federal-state comity," and in Congress's determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 n.10 (1973)).  The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two aspects.  First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).  The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*  Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court.  *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal

11

quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)).  The

burden of proving that a claim has been exhausted in accordance with a "state's chosen

procedural scheme" lies with the petitioner.  *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir.

1994).

      "A distinct but related limit on the scope of federal habeas review is the doctrine of

procedural default."  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  This doctrine provides

that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a

state procedural rule, and that procedural rule provides an independent and adequate ground for

the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."  *Id.*

(citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).  A federal habeas petitioner also

procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the

court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred.'"  *Id.* (quoting *Coleman*,

501 U.S. at 735 n.1).[6]  The burden of pleading and proving that a claim is procedurally defaulted

rests with the state.  *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations

omitted).  Absent a showing of "cause for the default and actual prejudice as a result of the

alleged violation of federal law," or a showing that "failure to consider the claims will result in a

fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim.

*Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

      Here, Petitioner did not properly raise his double jeopardy claim in his initial petition for

a writ of habeas corpus that he filed with the Supreme Court of Virginia.  Rather, he

---

[6]    Under these circumstances, even though the claim has not been fairly presented to the
Supreme Court of Virginia, the exhaustion requirement is "technically met."  *Hedrick v. True*, 443
F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

inappropriately attempted to raise it in a supplemental brief. If Petitioner now attempted to raise this claim to the Supreme Court of Virginia, it would be barred under Va. Code § 8.01-654(B)(2).[7] This rule constitutes an adequate and independent bar to federal habeas review. *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006). Petitioner fails to demonstrate cause and prejudice or any other circumstance that would excuse his procedural default. Accordingly Claim 3 is procedurally defaulted and barred from review here. Claim 3 will therefore be DISMISSED.

## III.   CONCLUSION

The § 2254 Petition (ECF No. 1) will be DENIED. Respondents' Motion to Dismiss (ECF No. 16) will be GRANTED. Petitioner's claims will be DISMISSED. Petitioner's Motion for Release on Bond (ECF No. 14) will be DENIED. Petitioner's Motion Requesting a Merits Review (ECF No. 22) will be GRANTED to the extent that the Court will dismiss the action pursuant to the Motion to Dismiss. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

                                                         /s/
                                        David J. Novak
Richmond, Virginia                      United States District Judge
Date: December 4, 2025

---

[7]   That statute provides, in pertinent part, "[s]uch petition shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code § 8.01-654(B)(2).